UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE ALABAMA GREAT SOUTHERN RAILROAD COMPANY | CIVIL ACTION |
| VERSUS | NO: 11-106 |
| EDWARD J. DINGEMAN, JR. | SECTION: "C" (2) |

**ORDER AND REASONS**[1]

Before the Court is Defendant's motion to dismiss. (Rec. Doc. 13). Plaintiff opposes the motion. (Rec. Doc. 15). Having reviewed the record, motions of counsel, and the law, the motion is DENIED for the following reasons.

**I. Background**

Plaintiff The Alabama Great Southern Railroad Company ("AGS") is incorporated in Alabama and has its principal place of business in Virginia. (Rec. Doc. 1 at 2). AGS owns a right-of-way at the south shore of Lake Pontchartain on which its railroad tracks run from Peoples Avenue Canal to its trestle over Lake Pontchartain in the City of New Orleans, Louisiana. *Id.* at 3. On this track run ten freight trains at speeds approaching fifty and sixty miles per hour and two Amtrak passenger trains at speeds approaching seventy-nine miles per hour. *Id.* at 5.

Defendant Edward J. Dingeman, Jr. is a Louisiana citizen, *Id.* at 2, and owns a lot known as Little Woods on Lake Pontchatrain, on which he previously built a "camp." (Rec. Doc. 13-1 at 2).

---

[1] Sami Dudar, a third-year student at the University of Georgia School of Law, assisted in the drafting of this order.

Both AGS' tracks on its right-of-way and a levee on the south side of these tracks fully enclose Little Woods. *Id.*; (Rec. Doc. 1 at 3). To get to his property, Dingeman regularly would park his vehicle atop the levee, descend stairs of his construction leading to the tracks below, and cross the tracks to reach his property. (Rec. Doc. 13-1 at 2).

Because Hurricane Katrina destroyed his camp and his stairs, Dingeman allegedly is rebuilding both in the same fashion and through the help of contractors. (Rec. Doc. 13-1 at 3, 4, 5); (Rec. Doc. 1 at 4); *see* (Rec. Doc. 13-2 at 15) (building permit for a "single family dwelling"). In constructing his wooden stairs, Dingeman allegedly has dug into the levee in order to cement support beams, extended the base of the stairs to approximately fifteen inches of AGS' track, and removed some of the track foundation. (Rec. Doc. 1 at 4).

Motivated by safety concerns, AGS notified Dingeman on January 10 and 11, 2011 to "immediately cease and desist all activities, construction and all acts of unauthorized passage, upon and over AGS' right-of-way and railroad tracks." *Id.* at 4-5. On January 19, 2011, AGS filed suit against Dingeman in the United States District Court for the Eastern District of Louisiana, seeking injunctive relief, nominal damages to its right-of-way, attorney fees, and costs. *Id.* at 7-8.

On April 19, 2011, Dingeman filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction as required by 28 U.S.C. § 1332. (Rec. Doc. 13 at 1). Specifically Dingeman argues that the matter in controversy is less than the statutory minimum of $75,000, exclusive of interests and costs. *Id.*

## II. Law and Analysis

### A. Standard of Review

A court that lacks the statutory or constitutional power to adjudicate a case must dismiss the case for lack of subject matter jurisdiction. *Home Builders Ass'n of Miss.. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Where a defendant has moved to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden to prove by a preponderance of the evidence that the court has subject matter jurisdiction over the case. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Manguno v. Prudential Prop. and Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002). As Dingeman has moved to dismiss pursuant to Rule 12(b)(1), the burden is on AGS to establish that this Court has subject matter jurisdiction.

In its motion, AGS asserts that this Court has subject matter jurisdiction based on diversity. (Rec. Doc. 15 at 3). Federal courts have subject matter jurisdiction over a case involving diverse parties and a "matter in controversy [that] exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332 (2011). Because this Court knows–and the parties do not contest–that diversity of citizenship exists, the only issue is whether AGS has established the minimum amount in controversy by a preponderance of the evidence.

### B. Amount in Controversy

Differing standards of proof apply in determining whether a party has asserted sufficient facts to satisfy the amount in controversy, depending on whether the complaint alleges a sum certain or an unspecified amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

Where a plaintiff claims a sum certain, a court may refuse jurisdiction if it appears " 'to a legal certainty that the claim is really for less than the jurisdictional amount.' " *Id.* (quoting *St. Paul Mercury Indem. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

Conversely, where a plaintiff has not pled specific damages, such as when the plaintiff seeks declaratory or injunctive relief, "the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *St. Paul Reinsurance v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Furthermore, in the case of declaratory or injunctive relief, the amount in controversy "is the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983).

Under this latter standard, in determining the amount in controversy, a district court must first screen the complaint to assess whether it is "facially apparent" that the claims meet the jurisdictional minimum. *St. Paul Reinsurance*, 134 F.3d at 1253; *Allen*, 63 F.3d at 1336 ("[w]here the district court is making the 'facially apparent' determination, the proper procedure is to look only at the face of the complaint and ask whether the amount in controversy was likely to exceed" the jurisdictional amount). If it is not facially apparent to the district court, then the court may supplement its evaluation "by setting forth the *facts* in controversy–preferably in the removal petition, but sometimes by affidavit–that support a finding of the requisite amount." *Allen*, 63 F.3d at 1335 (emphasis in original). However, "bare allegations [of jurisdictional facts] have been held insufficient to invest a federal court with jurisdiction." *Associacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 566 (5th Cir. 1993) (abrogated on other grounds).

In either case, the determination of a court's jurisdiction " 'depends upon the state of things at the time of the action brought.' " *Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)); *see St. Paul Indem.*, 303 U.S. at 289-90 ("Events occurring subsequent to the institution of the suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). Neither does "the inability of plaintiff to recover an amount adequate to give the court jurisdiction" nor the possibility of a valid defense to a plaintiff's claim "oust jurisdiction." *St. Paul Indem.*, 303 U.S. at 289.

In examining the present complaint, AGS has pled no specific damages. Therefore this Court first must ascertain whether it is "facially apparent" that AGS' claims are in excess of the jurisdictional amount. In its prayer for relief,

> AGS seeks a prohibitory injunction permanently preventing [Dingeman], his officers, agents, servants, employees, and attorneys, from: (1) crossing or traversing the railroad tracks on foot or by vehicle; (2) placing any equipment, tools, materials, etc. on the tracks or on the right-of-way; (3) carrying any equipment, tools, materials, etc. across, upon or over the tracks and/or right-of way; (4) entering onto AGS' property for any purpose; (5) constructing any permanent or temporary structure on AGS' right-of-way; and (6) in any fashion occupying or otherwise interfering with the AGS' right-of-way.

(Rec. Doc. 1 at 8). AGS further seeks an injunction ordering "Dingeman to permanently remove the walkway structure from AGS' right-of-way, including the hurricane protection levee…." *Id.*

5

Finally, AGS seeks "damages for [Dingeman's] trespass on AGS' property," as well as attorney's fees and costs. *Id.*

Excluding the costs of this suit, this Court is to consider, (1) the requested injunctive relief, (2) damages from the alleged trespass, and (3) the cost of attorney's fees. *See Foret v. S. Farm Bureau Life Ins.*, 918 F.2d 534, 536 (5th Cir. 1990) (including attorney's fees in determining jurisdictional amount). Because AGS concedes that "the damage caused by the construction of the walkway and unauthorized passage over its right-of-way would support an award of nominal damage only" (Rec. Doc. 1 at 7), and it is unlikely that attorney fees alone will achieve the jurisdictional minimum, if the minimum amount in controversy is to be met, it must be met through "the value of the right to be protected or the extent of the injury to be prevented" through injunctive relief.

Looking only at the complaint, AGS supplements its otherwise bare allegation that the jurisdictional minimum is met, *id.* at 2-3, by stating that Dingeman's actions cause the following: (1) a risk train of derailment; (2) the prevention of AGS' effective execution of its daily operations, such as walking inspections; (3) potential harm to the levee system; (4) potentially greater risk of personal injury; and (5) an increased risk of AGS' incalculable "[f]uture economic loss and liability." *Id.* at 6. While providing no monetary estimates of the potential liability, AGS submits to this Court some extent of its operation–involving ten freight trains and two passenger trains traveling at high speeds–to illustrate the commercial value at stake. (Rec. Doc. 1 at 5).

"[A]pplying only common sense," *Allen*, 63 F.3d at 1336, would be enough for this Court to find that the extent of the injury to life and property to be prevented meets the jurisdictional minimum on the face of the complaint. It is common knowledge that management and maintenance

of a railroad is a multi-million dollar operation, in no small part due to the real risk of personal injury and property liability. The right-of-way at issue is no abandoned railroad track, but a regularly traveled route, frequented by both freight and passengers trains. Because the safety interest in preventing a threat to life and property by keeping the tracks clear of obstruction facially appears likely to exceed the jurisdictional minimum on the face of the complaint, this Court does not need to supplement its analysis by going beyond the face of the complaint.

### III. Conclusion

Accordingly,

IT IS ORDERED that Defendant's motion to dismiss (Rec. Doc. 13) is DENIED.

New Orleans, Louisiana, this 1st day of June, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE